O’SCANNLAIN, Circuit Judge,
dissenting.
This exercise in statutory interpretation forces us to confront the fact that the most literal interpretation of a phrase is not always the most natural and reasonable one. For that reason, I cannot agree with the majority’s interpretation of 49 U.S.C. § 14708(d).
That subsection awards attorney fees to a shipper prevailing in a lawsuit against a carrier only if
(A) a decision resolving the dispute was not rendered through arbitration under this section within the period provided
... or
(B) the court proceeding is to enforce a decision rendered through arbitration under this section and is instituted after the period for performance under such decision has elapsed.
49 U.S.C. § 14708(d)(3)(A)-(B). On the majority’s reading, § 14708(d)(3)(A) applies even when no arbitration occurs at all because the shipper elects to head straight into court. In its insistence that this reading of § 14708(d)(3)(A) is not only preferable but unambiguously correct, the majority adheres to a decontextualized literalism that even the staunchest defenders of textualism eschew. See Antonin Scalia, A Matter of Interpretation 24 (1997) (“[T]he good textualist is not a literalist....”); Smith v. United States, 508 U.S. 223, 242, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (Scalia, J., dissenting) (“When someone asks, ‘Do you use a cane?,’ he is not inquiring whether you have your grandfather’s silver-handled walking stick on display in the hall.”).
I do not deny that it is possible to read the words of subsection (A) as the majority does, but our task is to find the most ordinary, natural, and reasonable interpretation of the provision’s language. See Bailey, 516 U.S. at 145, 116 S.Ct. 501. The provision appears in the midst of a statute designed to promote and to facilitate arbitration of claims under the Car-mack Amendment. Yet the majority’s interpretation of the attorney-fee provision turns it into a powerful incentive for shippers not to pursue arbitration. A shipper who takes his claim straight to court and wins has his legal costs paid by the carrier, while a shipper who submits the claim for arbitration must pay not only his own legal fees but part of the cost of the arbitration as well. See 49 U.S.C. § 14708(b)(5).
Only an unnatural literalism permits the majority to conclude that the statute’s text compels this counterintuitive result. Imagine that, one summer’s afternoon, a father turns to his son and says, “If you’d like to, we’ll go to the ballpark this afternoon and hit some balls. And I’ll tell you what — if your old Dad doesn’t hit a baseball over the fences, he promises to buy you some ice cream.”
*624 “Great, Dad,” says the son, “but I don’t want to play baseball this afternoon. Let’s play football in the yard instead.”
The father agrees, and after a few spirited hours of play, the two head back to the house for dinner. As they brush the dirt out of their clothes, the son- says, “Well, Dad, you owe me an ice cream. You didn’t hit a single baseball over the fences.”
Were the majority present at this scene and called upon to adjudicate the conflict, the father would protest in vain that his conditional promise of ice cream depended on the son’s acceptance of his invitation to play baseball. After all, the majority would insist, the father’s words were unambiguous: “If I don’t hit a baseball over the fences, I promise to buy you some ice cream.” And the majority would conclude that — to paraphrase its own reasoning— “given the ease with which the father expressly listed one eligibility criterion (his failure to hit a home run),” there was “no reason why he would bury a second (the son’s acceptance of the invitation to play baseball) implicitly within” his proposal. See Majority op., supra at 622.
But that is not how language works, either in conversation or in statutory interpretation. We .begin with a statute’s plain meaning, of course, but plain meaning is not meaning divorced from context. See Verizon Communications, Inc. v. FCC, 535 U.S. 467, 499-500, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002) (rejecting a “plain-meaning argument [that] ignores the statutory setting in which [the provision at issue] occurs”); Bailey v. United States, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (“[T]he meaning of statutory language, plain or not, depends on context.” (alteration in original)). A reasonable person would understand the father to be promising ice cream only if the son agrees to play baseball and the father hits no home runs. Similarly, in- my view, the most reasonable interpretation of § 14708(d)(3)(A) is that it makes attorney fees available if the shipper takes advantage of the opportunity for arbitration that the carrier is statutorily bound to provide and no decision is rendered within the sixty-day period provided.
Turning to extrinsic sources — as we may when statutes are ambiguous, see Int’l Ass’n of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group, 387 F.3d 1046, 1051-52 (9th Cir.2004) — only strengthens the case against the majority’s interpretation.. The current § 14708 is the result of Congress’s 1995. amendments to the dispute-settlement provisions of the Carmack Amendment. The earlier statute allowed, but did not require, carriers to offer arbitration. See 49 U.S.C. § 11711 (1995) (repealed 1995). It provided in relevant part:
(d) In any court action to resolve a dispute between a shipper of household goods and a motor common carrier providing transportation subject to the jurisdiction of the Commission under sub-chapter II of chapter 105 of this title concerning the transportation of household goods by such carrier, the shipper shall be awarded reasonable attorney’s fees if—
(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later;
(2) the shipper prevails in such court action; and
(3) (A) no dispute settlement program approved under this section was available for use by the shipper to resolve the dispute; or
(B) a decision resolving the dispute was not rendered under a dispute settlement program approved under this section within the period provided under sub *625 section (b)(8) of this section or an extension of such period under such subsection; or
(C) the court proceeding is to enforce a decision rendered under a dispute settlement program approved under this section and is instituted after the period for performance under such decision has elapsed.
49 U.S.C. § 11711(d) (1995) (repealed 1995).
Notably, former § 11711(d)(3)(B) is identical for all relevant purposes to current § 14708(d)(3)(A), the provision at issue in this case: each grants attorney fees when “a decision resolving the dispute was not rendered [in arbitration] within the period provided.” [1] It would be extremely odd if the two provisions, whose text is essentially the same, meant two sharply different things. Yet that is what the majority’s holding implies; for the former § 11711(d)(3)(B) cannot reasonably bear the interpretation the majority would place upon current § 14708(d)(3)(A). That interpretation would render subsection (A) of the earlier statute wholly redundant and unnecessary, because whenever “no dispute settlement program approved under [§ 11711] was available for use by the shipper to resolve the dispute,” it would necessarily have been true that “a decision resolving the dispute was not rendered under a dispute settlement program approved under this section within the period provided.”
Because I believe that the plain meaning of the language of § 14708(d)(3)(A) in its context[2] is that attorney fees are available only when shippers attempt arbitration but cannot obtain a decision within the allotted time — and because that interpretation, unlike the majority’s, is consonant with the statute’s history — I respectfully dissent.

. The only difference is that the phrase "under a dispute settlement program approved under this section” has been replaced with "through arbitration under this section,” a change that merely reflects the fact that arbitration programs need no longer be “approved” by the Commission.

. Part of the relevant context is the title of § 14708: "Dispute settlement program for household carriers.” The majority’s interpretation turns § 14708(d)(3)(A) into a general attorney-fee provision whose scope extends well beyond cases in which a dispute-settlement program is involved. The "title of a statute and the heading of a section are tools available for the resolution of a doubt” about the meaning of a statutory provision. Almendarez-Torres v. United States, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (internal quotation marks omitted).